## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| EDWARD BEACH, | Civil No. 12-981 (JRT/TNL) |
| Plaintiff, | |
| | **MEMORANDUM OPINION AND** |
| v. | **ORDER ON MOTION FOR** |
| | **SUMMARY JUDGMENT** |
| NORTHWIRE, INC., | |
| Defendant. | |

Andrew J. Holly, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for plaintiff.

Heather L. Marx, **COZEN O'CONNOR**, 33 South Sixth Street, Suite 4150, Minneapolis, MN  55402, for defendant.

Defendant Northwire, Inc. ("Northwire") terminated plaintiff Edward Beach after Northwire discovered that Beach sent inappropriate e-mails from his work computer. Because Northwire determined that Beach's termination was for cause, within the meaning of Beach's pension plan, it contends Beach is not entitled to over $600,000 in deferred compensation.  Beach brings a claim for benefits and a claim for interference with protected benefits under §§ 502 and 510 of the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. §§ 1132(a)(1)(B) & 1140,[1] and Northwire moves for summary judgment.  The Court will deny Northwire's motion for summary judgment

---

[1] ERISA is codified at 29 U.S.C. §§ 1001 *et seq.* and the Court will cite to the United States Code.

on Beach's claim for benefits because a reasonable factfinder could determine that Northwire's interpretation of the Plan was unreasonable.[2]

## BACKGROUND

### I.   BEACH'S EMPLOYMENT AND TERMINATION

Beach worked for Northwire as a national sales manager for approximately eight years and as director of sales for approximately four years.  (Aff. of Heather L. Marx, Ex. D (Dep. of Edward Beach [hereinafter "Beach Dep."]) 13:1-16, Dec. 21, 2012, Docket No. 17.)   On April 20, 2012, Northwire terminated Beach for sending inappropriate e-mails from his Northwire e-mail account.  (Decl. of Andrew Holly, Ex. C (Dep. of Lisa Costa) 46:15-47:18, Jan. 22, 2013, Docket No. 25.)  Northwire discovered the e-mails in connection with an information technology audit that was performed by an outside consultant.  (Marx Aff., Ex. C (Dep. of Katina E. Kravik) 30:20-31:13.)   The audit revealed that stored e-mails accounted for a substantial portion of the space on Northwire's servers, (Marx Aff., Ex. J at 4-6), and Northwire requested additional information, including a "capture" of three months' e-mails, in order to understand why it had so much e-mail traffic, (Marx Aff., Ex. B (Dep. of Michael Conger) 126:21-23; 131:11-132:2).

Northwire submitted evidence of approximately twenty "sexually explicit or inappropriate" e-mails sent or received by Beach over a two year period.  (Marx Aff.,

---

[2] Beach does not oppose the dismissal of his claim for interference with protected benefits and Northwire's motion for summary judgment on that claim is therefore granted.

Ex. K at NW1102593.)  Most of the e-mails contained pictures of naked women, some of

which were purely sexual in nature, and some of which were intended to be humorous.

Northwire draws the Court's attention in particular to an image of naked young child, an

image of "burnt genitalia," and an e-mail containing racist comments, all three of which

appeared clearly to be attempts at humor.  (*See* Marx Aff., Ex. K at NWI102621-2, 28-9,

& 30-2.)  Beach avers that the inappropriate e-mails "were intended to be humorous e-

mails to share with friends," that he sent only "one or two" inappropriate e-mails to a co-

worker, and that he did not supervise that co-worker.  (Decl. of Edward Beach ¶¶ 3, 7,

Jan. 22, 2013, Docket No. 26.)  According to Beach, none of the e-mails were sent to

Northwire customers.  (*Id.* ¶ 6.)

Northwire arranged for a human resources expert, Lisa Costa, to analyze the entire

e-mail capture.  (Marx Aff., Ex. C (Dep. of Katina E. Kravik) 53:14-24.)  Costa

recommended termination of nine employees whom she determined had "excessive

volume personal, non-business related and/or any offensive e-mails."  (Marx Aff., Ex. L

at NWI102495.)  Costa described Beach's e-mail misconduct as the worst case she had

seen in thirty years.  (Marx Aff., Ex. I (Dep. of Lisa Costa) 24:12-13.)  Northwire

ultimately terminated five of the nine employees and Beach was the only terminated

employee with benefits under the pension plan at issue, which the Court will describe

below.  (Marx Aff., Ex. L.)  Beach's termination letter stated that his termination was

based on "(1) [his] performance of acts of willful malfeasance and gross negligence in

matters of material importance to the Company and (2) [his] violation of the terms of

[his] employment agreement with the Company."  (Marx Aff., Ex. M.)

## II.    THE PERFORMANCE SHARE PLAN

As a high ranking executive, Beach participated in a pension plan known as the Performance Share Plan (the "Plan") under which he received annual contributions to a personal account that accrued investment returns.  (Marx Aff., Ex. H ("Plan") at § 4.0-4.3.)  At retirement, Beach would be entitled to the full value of the Plan, which was over $600,000 as of the end of 2009.   (Holly Decl., Ex. B ("Northwire Interrogatory Responses") at 7-8.)   The Plan provided, however, that "any payments under the Plan will be discontinued and forfeited, and the Company will have no further obligation . . . under the Plan" if Beach was terminated "for Cause."  (Plan § 3.4(b)(1).)

The Plan sets forth five types of "cause," three of which are relevant to the present case:  (1) "acts of willful malfeasance, gross negligence, fraud or dishonesty in a matter of material importance to the Company;" (2) "violation of any of the terms of his or her employment agreement with the Company;" (3) "failure to observe the rules and regulations of the Company after receipt of written warning from the Company . . . ." (Plan § 3.4(b)(A)(i), (iii), (iv).)   The Plan gives Northwire "all powers necessary to administer the Plan, including . . . powers . . . to interpret the provisions of the Plan." (Plan § 8.2.)   More specifically, it provides that Northwire "has total and complete discretionary authority to determine conclusively for all parties all questions arising in the administration of the Plan, to interpret and construe the terms of the Plan, and to determine all questions of eligibility and status of employees."  (Plan § 8.3.)

### III.   EMPLOYMENT AGREEMENT AND POLICIES

Northwire had an "Internet, E-mail and Computer Usage" policy ("Internet Policy") with the stated purpose of "protecting the company's public image." (*See* Marx Aff., Ex. F at 1 (filed under seal).)   The Internet Policy listed certain types of "inappropriate conduct," such as using racist language in public or private messages and sending, receiving, or accessing pornographic materials. (*Id.*)   The Internet Policy gave Northwire the right to access all messages and files on its computer systems. (*Id.* at 3.)

In connection with the Internet Policy, Beach received and signed an acknowledgement form stating his understanding that using the company's computer equipment for private purposes without management approval was prohibited. (Marx Aff., Ex. G.)   The form stated "I understand the [Internet Policy] and agree to adhere to all established usage guidelines" and "I am aware that violations of this policy will subject me to disciplinary action, up to and including discharge from employment." (*Id.*)

Beach does not dispute that he sent the e-mails at issue or that doing so violated the Internet Policy.   Beach contends, however, that the Internet Policy was not part of his "employment agreement."   According to Beach, his employment agreement is a three page letter he received when Northwire offered him a position. (*See* Beach Decl., Ex. A.) Among other things, the letter summarizes Northwire's goals, outlines the position Northwire offered Beach, and describes his salary and benefits. (*See id.*)   The owner of Northwire from the time when Beach joined the company testified that the three page letter looked like a Northwire employment agreement and appeared to be Beach's employment agreement. (*See* Holly Decl., Ex. A (Dep. of Mark Kravik) 24:18-25:10.)

## ANALYSIS

### I.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.  CLAIM FOR BENEFITS

Beach brings his claim for benefits pursuant to § 502 of ERISA, which allows a participant in an ERISA-qualifying plan to bring a civil action to recover benefits that are due.  *See* 29 U.S.C. § 1132(a)(1)(B).  The parties do not dispute that the Plan falls within the scope of ERISA, nor do they dispute that it is a "top hat" plan.  "A top hat plan is so called because it provides 'deferred compensation for a select group of management or highly compensated employees,' 29 U.S.C. § 1051(2), without being subject to the Internal Revenue Code's maximum annual benefit and compensation limits."  *Craig v. Pillsbury Non–Qualified Pension Plan*, 458 F.3d 748, 749 (8th Cir. 2006).

The Eighth Circuit has concluded that "top hat plans should be treated as unilateral contracts and reviewed in accordance with ordinary contract principles."  *Id.* at 752 (internal quotation marks omitted).  Where, as here, the top hat plan includes a clause granting the plan's administrator discretionary authority to interpret the plan, the court must "construe that term as [it does] any other contract term and give effect to its meaning."  *Bender v. Exel Energy, Inc.*, 507 F.3d 1161, 1167 (8th Cir. 2007).  Because ordinary contract principles simply require a party with discretion to exercise that discretion in good faith, the court's review is limited to a determination of whether Northwire's interpretation of the Plan is reasonable, which is a deferential standard.  *See id.*  Thus, at the summary judgment stage, the issue is whether a reasonable factfinder could determine that Northwire's interpretation of the Plan was unreasonable.[3]  If the answer is yes, summary judgment should not be granted.

Northwire determined that Beach's termination was for cause, as defined by the Plan, for two reasons: (1) Beach committed an act of willful malfeasance or gross negligence in a matter of material importance to the Company; and (2) Beach violated a term of his employment agreement.  (*See* Plan § 3.4(b)(A)(i) & (iii).)  If a reasonable factfinder could find that these determinations were unreasonable, the Court must deny summary judgment.

---

[3] There is no right to a jury trial under ERISA, so the factfinder will be the Court if the case reaches trial.  *See Houghton v. SIPCO, Inc.*, 38 F.3d 953, 957 (8th Cir. 1994).

A.    **Willful Malfeasance or Gross Negligence in a Matter of Material Importance to Northwire**

The Court will first analyze whether a reasonable factfinder could find that Northwire was unreasonable to determine that Beach committed an act of willful malfeasance or gross negligence in a matter of material importance to the company. Because the Plan uses the disjunctive "or," the Court must analyze both Northwire's determination that Beach committed an act of willful malfeasance in a matter of material importance to Northwire and its determination that Beach committed an act of gross negligence in a matter of material importance to Northwire.

1.    **Gross Negligence in a Matter of Material Importance**

Because the issue is whether Northwire interpreted the Plan's language reasonably as opposed to whether Beach's conduct actually amounted to gross negligence under the law of a particular jurisdiction, the Court will look primarily to generally accepted definitions of gross negligence for guidance. Gross negligence is defined as "[a] lack of slight diligence or care" or "[a] conscious, voluntary act . . . in reckless disregard . . . of the consequences to another party." Black's Law Dictionary (9th ed. 2009); *see also Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 827 (8th Cir. 2011) (citing a definition of gross negligence as "very great negligence or absence of even slight care" (internal quotation marks omitted)). While there is room for debate over its precise contours, it is clear that gross negligence implies conduct markedly worse than ordinary negligence.

Here, viewing the facts in the light most favorable to Beach, the Court finds that a reasonable factfinder could find that Beach's conduct was irresponsible, careless, or negligent, but did not rise to a more extreme level of gross negligence, and a reasonable factfinder could find that Northwire's determination to the contrary was unreasonable. Beach sent almost all of the inappropriate e-mails to friends who had no connection to Northwire.  He avers that he sent no inappropriate e-mails to Northwire customers and sent only one or two inappropriate e-mails to a co-worker at Northwire whom he did not supervise.

While Beach's conduct was certainly irresponsible, gross negligence implies a lack of even slight care.  A reasonable factfinder could find that Northwire's determination that Beach's conduct rose to that level was unreasonable.  Additionally, as the Court will discuss below, a genuine issue of material fact remains as to the reasonableness of Northwire's determination that Beach's conduct was "in a matter of material importance to the Company."

### 2.    Willful Malfeasance in a Matter of Material Importance

While some authorities provide more stringent definitions,[4] a simple definition of malfeasance is "[a] wrongful or unlawful act," Black's Law Dictionary (9th ed. 2009), and a simple definition of willful is "[v]oluntary and intentional, but not necessarily malicious," *id.*  Even assuming that Northwire was reasonable as a matter of law in determining that Beach committed willful malfeasance by intentionally violating the

---

[4] *See, e.g.*, *Ambling Mgmt. Co. v. Univ. View Partners, LLC*, 581 F. Supp. 2d 706, 713 (D. Md. 2008) (citing a definition of malfeasance as "evil conduct or an illegal deed").

Internet Policy, the Court finds that a genuine issue of material fact remains as to whether Northwire was reasonable to determine that Beach committed willful malfeasance **in a matter of material importance to the company**.

As a general matter, Northwire is undoubtedly correct that its "brand and reputation" are matters of material importance to it, as they are to all companies. Yet, viewing the facts in the light most favorable to Beach, it is not clear that his conduct actually damaged, or posed any realistic of threat of damaging, Northwire's brand and reputation. If the conduct at issue did not actually damage or threaten Northwire's brand and reputation, then it was not necessarily reasonable for Northwire to determine that Beach's actions were "in a matter of material importance to the Company." Further, the fact that Beach may have sincerely believed that his conduct was harmless to Northwire could potentially lead a reasonable factfinder to find that Northwire was unreasonable to determine that Beach committed willful malfeasance in a matter of material importance to the company.

Accepting Northwire's position that it may reasonably terminate an employee for cause any time he or she commits an intentional violation of the Internet Policy that could potentially relate to a matter of material importance to the company would lead to absurd results. For example, the Internet Policy prohibits participation in personal instant messaging, and the productivity of Northwire's employees is certainly a matter of material importance to the company. Yet, it would seem unreasonable for Northwire to determine that an employee must forfeit hundreds of thousands of dollars of deferred compensation for sending a single, innocuous instant message. While Beach's conduct

was more severe than this, the example serves to illustrate the necessity of requiring some actual connection between the employee's knowing violation of the Internet Policy and a matter of material importance to the company before the "cause" determination is necessarily reasonable.  If an employee believes his or her conduct, while a violation of the Internet Policy, is harmless, and the conduct is in fact harmless, it might be unreasonable for Northwire to determine that the employee had committed willful malfeasance in a matter of material of importance to the company.  Viewing the facts in the light most favorable to Beach, a reasonable factfinder could find that Northwire's determination was unreasonable in the present case for these reasons.

### B.    Violation of a Term of the Employment Agreement

The Court must also analyze Northwire's determination that Beach violated a term of his "employment agreement."  As noted above, the Plan distinguishes between violations of the "employment agreement," which amount to "cause" under the Plan without any warning, and violations of "rules and regulations," which amount to "cause" under the Plan only if written warning has previously been given.  (*See* Plan § 3.4(b)(A)(iii) & (iv).)

Beach contends that his employment agreement is the three page letter that he received when Northwire offered him a job and the Internet Policy is part of the company's rules and regulations.  Northwire, on the other hand, does not attempt to define or describe Beach's "employment agreement" in a holistic or complete way.  It simply argues that the Internet Policy and the accompanying acknowledgement form

must have been part of the employment agreement because Beach agreed to adhere to the Policy and the acknowledgement stated that he could be discharged if he failed to do so.

Neither party's explanation is entirely satisfying. If Beach is correct that the three page letter is his employment agreement, it would effectively render the "violation of a term of the employment agreement" provision of the Plan meaningless because there is little in the letter that one could conceivably "violate." The letter primarily describes the position being offered and summarizes the compensation and benefits. But if Northwire is correct that the Internet Policy is part of the employment agreement, Northwire could terminate an employee without warning, forcing the employee to sacrifice hundreds of thousands of dollars in deferred compensation, for seemingly trivial violations. Additionally, Northwire's interpretation may render the "failure to observe the rules and regulations after written warning" provision of the Plan superfluous because there is no evidence in the record of other Northwire rules, regulations, or policies that would not become part of an employment agreement under Northwire's definition.

Viewing the facts in the light most favorable to Beach, the Court finds that a genuine issue of material fact remains as to the reasonableness of Northwire's determination that Beach violated a term of his employment agreement. A reasonable factfinder could find that Northwire's determination was unreasonable because it allows for extreme penalties for minor infractions or because it renders the rules and regulations provision of the Plan superfluous. For this reason, and the reasons above, the Court denies Northwire's motion for summary judgment on Beach's claim for benefits.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 14] is **GRANTED in part** and **DENIED in part** as follows:

1.    Defendant's motion for summary judgment on plaintiff's claim for benefits (Count I) is **DENIED**.

2.    Defendant's motion for summary judgment on plaintiff's claim for interference with protected benefits (Count II) is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.

DATED:  July 8, 2013                                          _____ s/ John H. Tunheim _____
at Minneapolis, Minnesota.                                        JOHN R. TUNHEIM
                                                          United States District Judge